UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

RYAN JAMES VANSOLKEMA,

               Debtor.

_____/

Case No. DG 13-02691
Hon. Scott W. Dales
Chapter 7

SUPPLEMENTAL OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                     Chief United States Bankruptcy Judge

In the Final Pretrial Order dated April 21, 2016 (ECF No. 50), in this contested matter regarding the discharge injunction, the court overruled an objection under Federal Rule of Evidence 408[1] to the introduction at trial of certain email statements of counsel "for the reasons set forth on the record." The court orally ruled on the evidentiary objection of Kim Parker and Anthony Parker (the "Parkers") because the trial was scheduled to occur the following week, and the parties deserved to know, in advance, whether the court would admit what the Parkers' adversary, Ryan VanSolkema (the "Debtor"), regarded as a key piece of documentary evidence.

The document at issue, Exhibit 9A, is a string of email communications between the Parkers' attorney, Robert DeJong, Esq., and attorney Tim Taylor, Esq., who represented the Debtor at the time of the exchange. After the court overruled the Parkers' objection, Mr. DeJong said that, in response to the court's decision, he felt compelled to give his own testimony concerning the context of the email exchange.

On the record, the court and the parties briefly discussed the implications of Mr. DeJong's proposed testimony, and all agreed that he may testify in a narrative fashion without having to

_____

[1] In this opinion the court will refer to this rule simply as "Rule 408."

enlist the aid of another lawyer, notwithstanding M.R.P.C. 3.7 (Lawyer as Witness).  The court entered the Final Pretrial Order memorializing the hearing and, like the parties, began preparing for the upcoming trial.  The next week, however, Debtor's counsel reported a medical emergency requiring his immediate attention, and the court abruptly adjourned the trial without date as a courtesy to counsel.

Although the delay occasioned by this unanticipated adjournment is an inconvenient and unwelcome development in some respects, it nevertheless gives the court the chance to supplement its oral ruling and explain more fully its rationale.  It also creates an opportunity to consider the implications of Mr. DeJong's proposed testimony.

1.       Rationale for Overruling Rule 408 Objection

Exhibit 9A reflects communications between Mr. DeJong and Mr. Taylor in which the former seeks to persuade the latter that the Debtor should consent to judgment in favor of Mr. Parker or perhaps Ms. Parker through the divorce court.  The email from Mr. DeJong evidently included an amortization schedule in the full amount of his clients' claim.  Indeed, the only hint of compromise within the communication is Mr. DeJong's tepid suggestion that his client might be receptive to a "reasonable payment schedule," provided the Debtor would consent to judgment in the full amount of the claim.  This hardly seems like the sort of communication in the spirit of compromise protected by Rule 408.

Even assuming for the sake of argument that Exhibit 9A might be characterized as a compromise offer or negotiation (as opposed to simply inter-counsel communication setting forth

the basis of one side's demand against another),[2] the court finds Rule 408 inapplicable for a distinct

reason, based on a careful reading of the text which provides as follows:

> (a) Prohibited Uses.  Evidence of the following is not admissible--
> on behalf of any party--either to prove or disprove the validity or
> amount of a disputed claim or to impeach by a prior inconsistent
> statement or a contradiction:
>
> (1) furnishing, promising, or offering--or accepting,
> promising to accept, or offering to accept--a valuable consideration
> in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise
> negotiations about the claim--except when offered in a criminal case
> and when the negotiations related to a claim by a public office in the
> exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions.  The court may admit this evidence for another
> purpose, such as proving a witness's bias or prejudice, negating a
> contention of undue delay, or proving an effort to obstruct a criminal
> investigation or prosecution.

Fed. R. Evid. 408.  First, as with most requests to exclude evidence, the court must consider the

purpose for which the evidence is being offered.  Here, the Debtor intends to offer Exhibit 9A to

show that (1) the Parkers, through their agent Mr. DeJong, were aware of the Debtor's discharge

and (2) despite this awareness, endeavored to collect Mr. Parker's claim as a personal obligation

of the Debtor through the pretense of the parties' divorce case and the possible cover of §

523(a)(15).  According to the Debtor, this communication and related activity in the divorce court

gave rise to a claim in his favor against the Parkers under § 524 and the court's contempt powers,

which the court will refer to as the "Debtor's Claim."

---

[2] *Cf. In re East Airport Development, LLC,* 443 B.R. 823 (9th Cir. BAP 2011), *citing  Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1373 (10th Cir.1977) (communications that are "simply business communications" are not compromise negotiations).

The claim discussed within Exhibit 9A, in contrast, is the prepetition claim of the Parkers against the Debtor purportedly arising from Mr. Parker's role in co-signing (and later paying) a loan from Fifth Third Bank to the Debtor and Ms. Parker during their marriage. The court will refer to this claim as the "Parkers' Claim."

The basis for the Debtor's Claim is, in part, the very fact and content of the communications reflected in Exhibit 9A, and the legal predicates for *his* claims are §§ 524 and 727, as well as the court's inherent power to enforce its orders through civil contempt proceedings. The basis for the Parkers' Claim -- the subject of the allegedly protected compromise communications in Exhibit 9A -- is state contract, divorce, and indemnification law. In other words, the "claim" that would have given rise to the protection that Rule 408 affords is the Parkers' Claim and the rule would apply if the Debtor were offering Exhibit 9A for the purpose of disproving the validity or amount of the Parkers' Claim. But that is not his purpose here -- both are admitted.

Second, Rule 408(b) provides additional textual support for the court's decision by providing, as other exclusionary rules do, that "[t]he court may admit this evidence for another purpose . . . ." Fed. R. Evid. 408(b). Here, as just observed, the Debtor is asking the court to admit Exhibit 9A for a purpose other than defeating the Parkers' Claim, namely to establish through Mr. DeJong's communications, his clients' willful violation of the discharge injunction.

For these reasons, and those set forth on the record, the court overruled the Parkers' objection to the admission of Exhibit 9A under Rule 408.

2.      Implications of Mr. DeJong's Decision to Testify

As noted above, after the court gave its oral opinion regarding Rule 408, Mr. DeJong stated that he felt constrained to testify so the court would have a proper context for his email exchange,

presumably in an effort to fall on his own sword and prevent the court from visiting any adverse consequences of his email upon his clients, under principles of agency or otherwise.[3]

Despite the potential applicability of M.R.P.C. 3.7, the court agreed to permit Mr. DeJong to testify "in narrative fashion regarding the context of Debtor's Exhibit 9A, without the assistance of additional counsel" largely because the court (1) will have no difficulty separating argument from evidence, and (2) desires to allow the Parkers to avoid the expense of requiring additional counsel to ask questions of Mr. DeJong. *See* Final Pretrial Order at p. 2 (ECF No. 50). Mr. DeJong suggested that his testimony about the email relates to a tangential matter, and without a proffer the court is unable to say for sure (although Debtor's counsel suggested that the email exchange goes to the heart of his allegation that Mr. Parker used his daughter's divorce proceedings to collect his admittedly discharged debt). Regardless, the court will not disqualify Mr. DeJong at this late date, after the many hours he spent in the divorce and bankruptcy proceedings.

As the Final Pretrial Order notes, the court and the parties discussed the implications of Mr. DeJong's decision to testify, but one such implication deserves amplification given the importance of the attorney-client and related privileges and the risk of waiver of those protections that may accompany Mr. DeJong's testimony.

Certainly, the attorney-client privilege belongs to the holder of the privilege -- here the Parkers as Mr. DeJong's clients -- and only the holder of the privilege may waive it. Nevertheless, courts also recognize that "a client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir.

---

[3] Certainly, as the court observed during the hearing, an attorney is his client's agent, and the Supreme Court (and others) have explained that a principal sometimes must pay the price for his agent's conduct -- even when the agent is a lawyer. *See Pioneer Investment Services Co. v. Brunswick Assocs., L.P.*, 507 U.S. 380, 396-97 (1993) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *see also New Products Corp. v. Tibble (In re Modern Plastics Corp.)*, Slip Op., Case No. 09–00651, Adversary Pro. No. 13–80252 (Bankr. W.D. Mich. July 23, 2015) (citing *Pioneer Investment Services* and requiring client to pay discovery sanction for counsel's misuse of subpoena).

1999) (citing *In re von Bulow*, 828 F.2d 94, 104 (2d Cir.1987)).  If the court understands Mr. DeJong's purpose in testifying, he offers his explanation to protect his clients from any adverse consequences of his prior actions in trying to collect from the Debtor through the divorce proceedings, to show that he was the author of the litigation strategy and his clients were not.  This is equivalent, in the court's view, to a client's asserting "advice of counsel" as a defense, only here the counsel whose advice may be at issue is asserting the defense.

Putting aside the agency principles recognized in *Pioneer Investment Services*, if Mr. DeJong testifies that the demands set forth in Exhibit 9A originated with him and should not taint his clients, it seems only fair to permit the Debtor to cross-examine Mr. DeJong and inquire of the Parkers directly in order to test their attorney's "advice of counsel" defense, unhampered by an assertion of privilege.  The court's only point in making this observation at this time is to put the Parkers on notice that Mr. DeJong's testimony may result in a waiver of attorney-client or work product privileges to some extent if the court concludes that, in fairness, the Debtor should be permitted to inquire along these lines.  *See In re von Bulow*, 828 F.2d at 101-02 (referring to the "fairness doctrine" and "the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder").

Because of the importance of the attorney-client and related privileges, and the foreseeable risks[4] and controversies that might arise from Mr. DeJong's decision to testify, the court encourages the parties to confer in advance of trial about the issues just mentioned.

### CONCLUSION AND ORDER

After the passage of Mr. Potter's emergency, the court's deputy conferred with counsel about setting a new date for trial.  Given the schedules of the parties and the court, trial of this

---

[4]Every witness assumes the risk that the factfinder may not credit his testimony, but the reputational consequences of an adverse credibility determination may be especially severe for a member of the bar.

contested matter will take place on June 23, 2016.  Counsel should take whatever steps they regard as necessary to secure the attendance of witnesses at the adjourned trial and mitigate the inconvenience and expense to parties and nonparties alike arising from their participation in this proceeding.

NOW, THEREFORE, IT IS HEREBY ORDERED that the trial concerning Debtor's motion for contempt of the discharge, originally scheduled to commence on April 27, 2016 at 9:30 a.m., is ADJOURNED to June 23, 2016 at 9:30 a.m., at the United States Bankruptcy Court in Grand Rapids, Michigan.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Supplemental Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon John A. Potter, Esq., Robert L. DeJong, Esq., and the United States Trustee.

IT IS FURTHER ORDERED that Mr. DeJong shall serve a copy of this Supplemental Opinion and Order upon his clients, and promptly file proof of such service.

END OF ORDER

**IT IS SO ORDERED.**

**Dated May 5, 2016**



_____
Scott W. Dales
United States Bankruptcy Judge