UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

RYAN JAMES VANSOLKEMA,

              Debtor.

_____/

Case No. DG 13-02691
Hon. Scott W. Dales
Chapter 7

OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                      Chief United States Bankruptcy Judge

I.  INTRODUCTION

In its Opinion After Trial dated July 15, 2016,[1] the court held Kimberly Parker and her father, Anthony Parker, in contempt for willfully violating the court's Discharge by seeking to collect a discharged debt, in part by filing a Motion for Post-Judgment Relief in the Kent County Family Court.  At the conclusion of the ruling, the court announced its intention to amplify the Discharge by enjoining further prosecution of the Parkers' claims in the Family Court, and awarding attorney's fees, in an amount to be determined, to compensate Mr. VanSolkema for having to (i) defend himself in the Family Court and (ii) enforce the Discharge in the United States Bankruptcy Court.

After considering the parties' post-hearing submissions directed to the attorney fee issue, the court will require the Parkers to pay Mr. VanSolkema $23,754.60, representing a reasonable attorney fee incurred for the preliminary activity in the Family Court and for reasonable fees and

---

[1] ECF No. 57 (the "Opinion After Trial").  For convenience, capitalized terms in today's Opinion and Order shall have the same meanings prescribed in the Opinion After Trial.

expenses incurred in reopening Mr. VanSolkema's bankruptcy case and prosecuting his own motion in the United States Bankruptcy Court to hold the Parkers in contempt of the Discharge.

## II. ANALYSIS

### A.     Nature of the Award

As previously observed, bankruptcy courts generally enforce the discharge as they would any other injunction, using their contempt power. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000). Because a violation of the discharge offends the court, not simply a debtor, a bankruptcy court has considerable discretion to fashion appropriate relief. The purpose of the exercise is not punitive, but coercive and remedial. *See In re Burkman Supply, Inc.*, 217 B.R. 223 (W.D. Mich. 1998); *In re Lawrence*, 164 B.R. 73 (W.D. Mich. 1993).

Recognizing the "modern trend" in discharge-related contempt proceedings, bankruptcy courts typically award actual damages and a reasonable attorney fee upon finding a willful violation of the discharge. *In re Greenspan*, 2011 WL 310703, at *3 (quoting *Miles v. Clarke (In re Miles)*, 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006); *In re Miller*, 247 B.R. 224 (Bankr. E.D. Mich. 2000). The court sees no reason to depart from the modern trend.

In making today's award, the court has carefully considered the ameliorating factors mentioned in the Parkers' Memorandum Opposing Debtor's Motion for Sanctions and Attorney Fees (the "Parkers' Response," ECF No. 60), as well as the court's firm conviction that the Parkers' violation of its injunction was a willful, calculated, and concerted effort to undermine the Discharge that the court entered to protect Mr. VanSolkema.

### B.     Amount of the Award

Mr. VanSolkema's Motion for Damages After a Finding of Contempt by Creditors for Violation of the Discharge Injunction (the "Damages Motion," ECF No. 59), filed at the court's

invitation, makes no request for actual damages resulting from the Parkers' contempt, other than two categories of attorney fees and expenses. First, the Damages Motion seeks fees incurred for services generally rendered by Diane E. Goller, Esq., of the law firm Dilley, Kooistra, Goller & Reens, PLLC, in connection with the Family Court Motion; second, it seeks fees and expenses incurred for service generally rendered by John A. Potter, Esq., of the law firm Twohey Maggini, PLC, in connection with the contempt proceedings in the United States Bankruptcy Court. Both categories of fees find factual support in the affidavits and time records of Mr. VanSolkema's attorneys, Ms. Goller and Mr. Potter. *See* Damages Motion at Exh. A (Affidavit of John A. Potter, Esq.) and Exh. B (Affidavit of Diane E. Goller, Esq.). Indeed, in the Parkers' Response, they generally do not quibble with the rates or services provided by Mr. VanSolkema's attorneys, "except to the extent that the attorneys conducted far more discovery in both matters than should have been necessary for either proceeding." *See* Parkers' Response at pp. 4-5.

For its part, the court has carefully reviewed the fee itemizations and, like the Parkers, remains concerned about the duplication of fees incurred in the Family Court and in this court.[2] Because Mr. VanSolkema, or his counsel, ought to have sought bankruptcy court intervention sooner, the court finds it inequitable to impose upon the Parkers all of the costs incurred in connection with the Family Court Motion. It certainly seems reasonable to recognize that Mr. VanSolkema had to file a response to the Family Court Motion, attend the initial hearing before Judge Zemaitis on April 10, 2015, and participate in the settlement and pretrial conference on May 28, 2015.[3] According to Ms. Goller's affidavit, she spent 9.70 hours, at $300 per hour, from her

---

[2] The court expressed this very concern in its earlier ruling. *See* Opinion After Trial, at p. 21 n.7 ("In exercising its discretion to mete out compensatory relief, the court will not be inclined to award Mr. VanSolkema significant fees incurred in defending against the Family Court Motion, given his delay in filing the contempt motion in this court and thus his failure to mitigate damages.").

[3] *See* Affidavit of Diane E. Goller at ¶¶ 8-9.

first client meeting to discuss the Family Court Motion (on April 7, 2015) through the end of the pretrial conference before Judge Zemaitis (on May 28, 2015). The court finds this portion of the fee request -- $2,910.00 -- reasonable and necessary, and therefore compensable. Nevertheless, because the Family Court Motion (and Mr. DeJong's pre-filing correspondence with Mr. Taylor) so obviously raised the specter of the Parkers' contempt of Mr. VanSolkema's Discharge, awarding fees for the rest of the Family Court proceedings *and* for the contempt proceedings would be duplicative and inconsistent with Mr. VanSolkema's duty to mitigate damages. The court, therefore, will cap the Family Court portion of the fee award at $2,910.00.

With respect to the fees that Mr. Potter charged to reopen Mr. VanSolkema's bankruptcy case, and to prepare, file, and prosecute the contempt motion, the court will award the fees as requested, without reduction. The Parkers' only criticism of the fee award was that Mr. VanSolkema did not need to depose Mr. Parker twice, and elicit live testimony in court on two occasions (once in the Family Court and once in the Bankruptcy Court). The court generally agrees with the Parkers on this point, and excluding the lion's share of fees incurred in connection with the Family Court Motion will adequately address the risk of duplication.

Insofar as Mr. VanSolkema seeks fees attributable to deposing Mr. Parker in connection with the contempt proceeding and eliciting testimony from him during the hearing in this court on June 23, 2016, the court finds such an award completely consistent with the theory and practice of pretrial discovery in federal courts and with the rules that apply in this contested matter under Fed. R. Bankr. P. 9014(c). Indeed, it probably would have been malpractice for Mr. Potter to have elicited testimony from a key witness such as Mr. Parker without deposing him first. Awarding compensation for a single deposition and for Mr. Parker's bankruptcy court testimony is unquestionably reasonable.

Accordingly, the court will also require the Parkers to shoulder the entire expense of the contempt proceedings, including fees and expenses of Mr. Potter in the amount requested, $19,624.00, plus costs in the amount of $1,220.60. This award represents 89.2 hours at a rate of $220.00 per hour, for representation in the United States Bankruptcy Court spanning nearly eleven months. The court conducted several hearings at which Mr. Potter capably represented his client, and given the nature of the relief requested, the Parkers were on notice that they might be called upon to answer for his fee as well as Mr. DeJong's.

To summarize, the court will award $23,754.60 representing reasonable fees and expenses incurred in both courts as a result of the Parkers' willful violation of the Discharge. Although the rationale underlying the award favors Mr. VanSolkema's bankruptcy counsel over his divorce lawyer, nothing in this order should be read as precluding Mr. VanSolkema from using the fee award to pay his attorneys as they may agree, or as he sees fit.

### III.  CONCLUSION AND ORDER

The court acknowledges the contrition of the Parkers and their counsel, as well as their acceptance of the court's analysis in the Opinion After Trial and "the consequences of that analysis." *See* Parkers' Response at p. 1. Nevertheless, the court is bound to enforce its orders, including the Discharge in this case, in a manner that balances federal policies and private interests. In the court's opinion, this balancing requires the court to enter judgment against the Parkers, jointly and severally, and in favor of Mr. VanSolkema, in the amount of $23,754.60. Mr. VanSolkema may collect this sum from the Parkers as any other money judgment, in accordance with applicable law. *See* Fed. R. Civ. P. 69; Fed. R. Bankr. P. 7069 and 9014.

In addition, as predicted in the Opinion After Trial, the court will amplify the Discharge injunction by enjoining the Parkers from conducting further proceedings in the Family Court in a manner inconsistent with the court's prior ruling.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

(1)     Ms. Parker shall promptly withdraw the Family Court Motion, with prejudice, and she shall refrain, and is hereby ENJOINED, from seeking relief against Mr. VanSolkema or his property based on the Hold Harmless Term of the JOD;

(2)     Mr. Parker, Ms. Parker, their agents, servants, employees, attorneys, and other persons who are in active concert or participation with the Parkers (or either of them), are hereby ENJOINED from commencing or continuing any action, employing any process, or taking any other act to collect, recover or offset any debt related to the Fifth Third loan (as described in the Opinion After Trial) as a personal liability of Mr. VanSolkema, or from the property of Mr. VanSolkema; and

(3)     Mr. VanSolkema shall recover from Kim and Anthony Parker, jointly and severally, the sum of $23,754.60.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order upon Kim Parker, Anthony Parker, Robert DeJong, Esq., Ryan VanSolkema, John Potter, Esq., and the United States Trustee, and shall also send a courtesy copy of the same by first class mail addressed to the Hon. Daniel V. Zemaitis, Kent County Circuit Judge.

END OF ORDER

**IT IS SO ORDERED.**

**Dated August 17, 2016**



Scott W. Dales
United States Bankruptcy Judge